## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| JOHN SANDBEK, | * | **CHAPTER 13** |
|     Debtor | * | |
| | * | **Case No. 1-04-bk-05130** |
| PNC BANK, NATIONAL | * | |
| ASSOCIATION, | * | |
|     Objectant | * | |
| | * | |
|  v. | * | |
| | * | |
| JOHN SANDBEK, | * | |
|     Respondent | * | |
| | * | |

## OPINION

### Procedural and Factual History

On August 24, 2004, John Sandbek ("Debtor") filed a Chapter 13 Petition. On Schedule

"D," he listed two mortgages on his residence located at 32 West High Street, Windsor,

Pennsylvania. He valued the residence at $81,000.00 with a first mortgage of $83,228.00 and a

second mortgage of $21,788.00. The second mortgage is held by PNC Bank ("PNC"). In his

Plan, Debtor proposed to strip off PNC's lien alleging that the value of the property was less than

the amount of the first mortgage. In compliance with the Court's requirements as set forth in *In

re Dickey,* 293 B.R. 360 (Bankr. M.D. Pa. 2003), the Plan contained an explicit statement that

Debtor intended to establish the value of the secured claims through the plan confirmation

process and that no motion or adversary proceeding would be filed. PNC objected to the Plan

and  asserted that the value of the residence exceeded the balance due on the first mortgage.

Therefore, PNC argued, Debtor was not authorized under 11 U.S.C. § 1322(b)(2) to modify

PNC's claim. On February 17, 2005, a hearing was held to determine the value of PNC's claim.

The parties agreed that since Debtor did not object to the first mortgage of Household Finance ("Houshold") in an amount of $82,547.31, PNC's claim would be secured only if the value of the property exceeded the amount of Household's claim.

Both PNC and Debtor introduced evidence of the fair market value of the property through the testimony of appraisers. Based on an inspection of the interior and exterior of the residence, Debtor's appraiser, Mark Saunders ("Saunders"), valued the property at $82,000.00. After a similar inspection, PNC's appraiser, Roger Bartels ("Bartels"), valued the property at $87,000.00. Both appraisers valued the property by using the "sales comparison approach" in which the value of the subject property is established by examining the sales prices of similar properties sold at a time proximate to the appraisal. Both appraisers were admitted to testify as experts on the valuation of residential real estate.

A debtor has the burden of proving the value of property when the amount of a secured claim is established under 11 U.S.C. §506(a). *GMAC v. Jones,* 999 F.3d 63 (3rd Cir. 1993). Weighing the testimony of each appraiser, I find Saunders' testimony to be more persuasive. Both appraisers' comparables were significantly higher in value than the appraisers' estimates of the value of Debtor's home.[1] While Bartels used comparables that were closer geographically to Debtor's residence than did Saunders,[2] the comparables chosen by Saunders were more similar in age to the subject property than those selected by Bartels. Debtor's home was built sixty-two

---

[1]Saunders' comparables had sold at prices of $102,900, $81,000 and $99,900, for an average value of $94,600. Bartel's comparable had sales prices of $96,000, 99,900 and $87,700, for an average value of $94,533.

[2]Saunders used three comparables, which were two miles, three miles and four miles from Debtor's home. Bartels' three comparables were .5 miles, 1.0 mile and 1.5 miles from Debtor's home.

2

years ago, but Bartels used two comparables built only thirty-two years ago and one comparable built twenty-nine years ago. By comparison, Saunders' comparables were built eighty-seven years ago, seventy-five years ago and fifty-eight years ago. For one of the comparable properties Bartels failed to consider that the seller paid part of the closing costs, thus distorting the sale price as a measure of value for that property. In establishing the value at $82,000, Saunders also selected comparable properties that a potential buyer would view as "comparable," that is, similar in appearance and setting.

Accordingly, I conclude that the value of the property is $82,000.00. Since the first mortgage exceeds the appraised value, there is no equity to which PNC's claim can attach. Therefore, PNC's secured claim is valued at zero, and the second mortgage may be stripped off. The objection to confirmation will be overruled, and the Plan may be confirmed.

BY THE COURT,

Mary D. France

Bankruptcy Judge

Date: May 19, 2005

*This electronic opinion is signed and filed on the same date.*